IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SCOTT ZIRUS #01640002, <br><br> Plaintiff, <br><br> v. <br><br> MOLLY FRANCIS, *in her official capacity as Chairperson of the Texas Board of Criminal Justice*, et al. <br><br> Defendants. | § § § § § § § § § § § § §   1:24-CV-00507-RP |

## ORDER

Before the Court are Plaintiff Scott Zirus's civil-rights complaint (Dkt. 1), the Motion to Dismiss (Dkt. 10) filed by Defendants Molly Francis (Chairperson of the Texas Board of Criminal Justice), Bryan Collier (Executive Director of the Texas Department of Criminal Justice), and Bobby Lumpkin[1] (former Director of the Texas Department of Criminal Justice – Correctional Institutions Division), Plaintiff's response thereto (Dkt. 11), Defendants' reply (Dkt. 12), Plaintiff's Motion for Appointment of Class Counsel (Dkt. 13), Plaintiff's Motion for Class Certification (Dkt. 14), Plaintiff's sur-reply (Dkt. 15), Defendants' Motion to Strike Plaintiff's Sur-Reply (Dkt. 16), Defendants' Motion to Stay Litigation (Dkt. 17), Plaintiff's second sur-reply (Dkt. 18), and Plaintiff's response to the Motion to Strike (Dkt. 19). Having considered the parties' briefs, the record, and the relevant law, the Court denies Defendants' motion to dismiss, Plaintiff's motion for counsel and class certification, and Defendants' motion to strike; dismisses as moot Defendants' motion to stay; dismisses Defendant Molly Francis for want of jurisdiction; and stays and closes the case.

---

[1] Bobby Lumpkin is no longer the Director of the Correctional Institutions Division. His position has been filled by Eric Guerrero. Pursuant to Federal Rule of Civil Procedure 25(d), Eric Guerrero is substituted for Bobby Lumpkin.

1

## I. BACKGROUND

At the time he filed his civil-rights complaint, Plaintiff was confined in the Robertson Unit of the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ) in Abilene, Texas. He sued, in their official capacities, Patrick O'Daniel, Bryan Collier, and Bobby Lumpkin. On June 7, 2024, the Court substituted Molly Francis, who replaced Patrick O'Daniel as Chairperson of the Texas Board of Criminal Justice. In this Order, the Court substitutes Eric Guerrero, who replaced Bobby Lumpkin as Director of the Correctional Institutions Division.

Plaintiff alleges, within TDCJ, there are currently 70 units or facilities that are not fully air conditioned and have no way to maintain humane temperatures. According to Plaintiff, 49 of the 70 units are partially air conditioned. Plaintiff calculates that potentially 107,295 TDCJ residents are exposed to extreme temperatures in their housing areas without the means to meaningfully and safely regulate the temperature.

Plaintiff alleges the mitigation measures implemented by TDCJ to regulate temperature are ineffective and sometimes dangerous. Plaintiff asserts nearly every year there are reports of residents and staff falling extremely ill or dying from extreme heat. Plaintiff believes Defendants have not accurately recorded the deaths due to heat in TDCJ.

Plaintiff maintains extreme heat makes it difficult for the human body to properly regulate its temperature thereby leading to illnesses including cramps, heat stroke, heat exhaustion, and hyperthermia. He explains heat stroke is the most serious heat-related illness and can cause death or permanent disability if emergency treatment is not given.

Plaintiff further asserts that hot temperatures may increase aggression, and this aggression could lead to violence. He also asserts extreme heat can increase the likelihood of self-harm and suicide.

2

Plaintiff argues TDCJ's heat mitigation measures are inadequate. He explains the use of electric fans is counterproductive and can be dangerous. He further explains residents have no access to cool water when confined in their cells. According to Plaintiff, the only available water source in a cell is the water faucet connected to the toilet, resulting in room temperature water. Crowded conditions and understaffing allegedly impact access to water in common areas. Plaintiff complains staff shortages make it difficult to obtain access to respite areas. In addition, Plaintiff reports that staff deny residents access to respite areas unless they believe the resident is experiencing heat-related illness or are on the list of residents with medical heat restrictions. Similarly, Plaintiff asserts extra cooled showers do not reduce health risks of extreme heat to a significant degree. Finally, Plaintiff asserts the TDCJ buildings, constructed of steel and concrete, have a slow thermal response to outdoor air. According to Plaintiff, the buildings rarely equalize with the outside air temperature before the sun rises and the buildings begin to heat again.

Plaintiff concludes TDCJ's heat mitigation measures are ineffective to reduce the substantial risk of serious harm to a constitutionally acceptable level. He argues Defendants' absolute reliance upon these inadequate and ineffective heat mitigation measures pose a danger that is so obvious that Defendants must either know about it or be purposefully disregarding it.

Plaintiff requests the Court declare the actions and omissions described in his complaint violate his rights under the Constitution and laws of the United States. He further requests injunctive relief to resolve the "unconstitutional heat conditions in TDCJ." Plaintiff asserts, if amended mitigation measures prove ineffective, injunctive relief should include the establishment of a heat-index between 65 and 85 degrees inside all housing areas and the installation of climate control. Plaintiff further seeks reasonable attorney's fees, costs, and a jury trial.

Defendants move to dismiss Plaintiff's complaint. They first argue Plaintiff lacks standing to bring his suit because Plaintiff failed to allege an injury in fact. In addition, they argue the relief

Plaintiff seeks exceeds the scope of the judicial power. Defendants also argue Plaintiff's claims are not ripe because his fears are speculative. Defendants further claim that the Eleventh Amendment bars Plaintiff's suit and that Plaintiff failed to state a claim of an Eighth Amendment violation of excessive heat.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area*

4

*Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The Court first considers whether it has subject matter jurisdiction over Plaintiff's claims against Defendants. *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.") (citation omitted). Because Defendants have not attached any supporting materials to their motion, they have made a facial attack.[2] Therefore, the Court will "look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x. 260, 263 (5th Cir. 2020) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

### 1. Standing

Defendants argue that Plaintiff's claims fail because he has not established an injury in fact. (Mot., Dkt. 10, at 5–7). In response, Plaintiff argues he need not wait to suffer an injury in fact before he can file suit. (Resp., Dkt. 11, at 2). Plaintiff further asserts he is serving a 40-year sentence without the possibility of parole and as he ages his health inherently declines. *Id.* at 3. He concludes his risk increases with every summer he is forced to endure without adequate mitigation measures. *Id.* Plaintiff claims he is subjected to "a cruel game of Russian roulette every summer." *Id.* at 4. Plaintiff further asserts in 2023 Abilene experienced 65 days over 100 degrees and on every one of those days he was

---

[2] The difference between a facial and a factual attack is as follows: "if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

in imminent danger of heat-related illness or death "by virtue of universal human limitations." (Sur-reply, Dkt. 15, at 1). In his second sur-reply Plaintiff notes this Court has addressed some of the exact same issues in its June 14, 2024 order, denying the defendant's motion to dismiss in *Tiede v. Collier*, No. 1:23-CV-01004-RP (W.D. Tex.). (Sur-reply, Dkt. 18, at 1-3).

Generally, to have Article III standing, "'a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).

Defendants do not argue that Plaintiff has not shown that the injury is fairly traceable or likely to be redressed by a favorable decision. (*See* Mot., Dkt. 10). Accordingly, the Court only addresses the question of whether Plaintiff's claims are sufficiently concrete for adjudication. "Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cnty., Miss.*, 205 F.3d 265, 268 (5th Cir. 2000) (citing *Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins.*, 280 F.2d 453, 461 (5th Cir. 1960)).

Plaintiff details in his complaint how approximately 107,295 TDCJ prisoners suffer from and are at risk of suffering from a number of heat-induced illnesses due to unit temperatures when the temperature routinely exceeds 100° Fahrenheit in the summer. (Compl., Dkt. 1, at 3, 5-6). TDCJ prisoners are at risk of developing a number of heat-induced illnesses and potentially even dying due to excessive heat inside the units.

Additionally, it is not seriously disputed that summer temperatures in Texas regularly exceed 100° Fahrenheit. Hot temperatures will soon begin for the season, and it is sufficiently certain that those temperatures will increase as Texas's summer intensifies. The risk of intense, extreme summer

heat is "imminent and substantial," and therefore presents an injury that is sufficiently concrete for Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Accordingly, the Court finds that Plaintiff has established an injury in fact.

## 2. Ripeness

Defendants also argue that Plaintiff's claims are not ripe. (Mot., Dkt. 10, at 15-16). In response, Plaintiff argues his claims are ripe because every time the temperature exceeds 95° Fahrenheit and he is confined in a cell without air conditioning the serious risk of harm is imminent. (Resp., Dkt. 11, at 3–4).

"The standing question . . . bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Ripeness is "a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) ("*NOPSI*").

The Court finds that Plaintiff's claims are ripe. This case is not "abstract or hypothetical." *NOPSI*, 833 F.2d at 586; *see also United Transp. Union v. Forster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."). As noted above, TDCJ prisoners are at risk of developing a number of heat-induced illnesses and potentially even dying due to excessive heat inside the units. This injury is not speculative, and there is no serious suggestion that the Texas summer heat will abate this year. Hot temperatures are coming and are certain to worsen as the summer intensifies—the mere fact that the exact degree of summer heat is unknown does not make Plaintiff's injuries speculative. Accordingly, this case is ripe.

3. Sovereign Immunity

Defendants also argue that Plaintiff's claims are barred by sovereign immunity and that the *Ex Parte Young* exception to sovereign immunity does not apply. (Mot., Dkt. 10, at 16-17). Plaintiff responds that Defendants are not immune from suit because he only sues Defendants in their official capacity and only seeks declaratory and injunctive relief. (Mot., Dkt. 11, at 4).

In Defendants' reply, they argue for the first time that Plaintiff's claims against Defendant Francis are not redressable by judicial relief. (Reply, Dkt. 12, at 7). They explain the responsibilities of Francis, an individual member of the Texas Board of Criminal Justice, do not include development or enforcement of TDCJ heat mitigation policy. *Id.* They cite Texas Department of Criminal Justice Board Policy 1.01 (BP-1.01) and contend that Plaintiff failed to allege facts that individual Board Members are responsible for promulgating or enforcing policy regarding day-to-day operations like climate control.

Plaintiff provides the Court with BP-1.01, which is no longer available on the TDCJ website. BP-1.01 provides "[a]s the governing body of the TDCJ, the TBCJ employs an executive director, approves the operating budget of the TDCJ and the TDCJ's request for appropriations, appoints members of advisory committees, adopts rules, develops and implements policies, and applies for and accepts gifts or grants. Texas Gov't Code §§ 492.001 and 492.013.

The Court must decide whether Plaintiff's suit falls within the *Ex Parte Young* exception to sovereign immunity. Defendants are sued in their official capacity —in other words, they are sued as an arm of the State of Texas. States are immune from suit under the Eleventh Amendment. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."). Texas has not consented by statute, and Section 1983 does not waive state sovereign immunity. *Quern v. Jordan*, 440

9

U.S. 332, 338 n.7 (1979). Despite this bar, a court may grant prospective injunctive relief based on an ongoing violation of the federal constitution under *Ex Parte Young*, 209 U.S. 123 (1908). This exception "is based on the legal fiction that a sovereign state cannot authorize an agent to act unconstitutionally." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (cleaned up). In determining whether a complaint falls within the *Ex Parte Young* exception, a court conducts a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Additionally, the *Young* exception applies only when the state official being sued has "some connection to the state law's enforcement." *Tex. Democratic Party*, 961 F.3d at 400 (5th Cir. 2020) (cleaned up). To satisfy this requirement, it is not enough that the official has a "general duty to see that the laws of the state are implemented." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Instead, the official must have a specific duty to enforce the challenged law. *Okpalobi v. Foster*, 244 F.3d 405, 414 (5th Cir. 2001). If the official sued is not "statutorily tasked with enforcing the challenged law," then the necessary connection is absent and "our *Young* analysis ends." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019).

Plaintiff's complaint meets these requirements. As to the first two prongs, Plaintiff alleges that Defendants are violating the Eighth Amendment, and he seeks prospective (declaratory and injunctive) relief. (Compl., Dkt. 1, at 12). Defendants argue that Plaintiff has not alleged an injury in fact or a significant possibility of future harm and Plaintiff's "nonexistent injuries are not redressable by his requested judicial relief" (Mot., Dkt. 10, at 12). However, the Court has already determined Plaintiff has a sufficiently concrete injury that is imminent and there is a significant possibility of future harm to Plaintiff.

Plaintiff has also shown a requisite connection to Defendant Collier's and Defendant Guerrero's enforcement roles at TDCJ, as they could require all TDCJ units to have adequate air

conditioning to maintain safe indoor temperatures. *See City of Austin*, 943 F.3d at 1002 ("[I]t may be the case that an official's connection to enforcement is satisfied when standing has been established. … At the minimum, our caselaw shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question.") (cleaned up).

Plaintiff has not, however, shown a requisite connection to Defendant Francis, an individual member of the Texas Board of Criminal Justice. Therefore, Plaintiff has met the requirements of the *Ex Parte Young* exception to sovereign immunity with respect to Defendants Collier and Guerrero but not to Defendant Francis. As Defendants Collier and Guerrero are not immune from suit, the Court proceeds to analyze their Rule 12(b)(6) argument.

### B. Failure to State a Claim

Defendants argue that Plaintiff failed to allege an injury in fact and failed to allege Defendants were deliberately indifferent to heat-based harm. (Mot., Dkt. 10, at 18-19). In response, Plaintiff argues he expressly alleged deliberate indifference in his complaint. (Resp., Dkt. 11, at 5). He further argues that Defendants are fully aware of the unconstitutional heat conditions in TDCJ, as that issue has been litigated over a decade, and they implemented heat mitigation measures. *Id.* He further argues Defendants are aware the heat mitigation measures are ineffective to reduce the risk of serious harm to a constitutionally permissible level for any inmate. *Id.* He concludes Defendants acted with deliberate indifference by refusing to take any other adequate action to remedy the unconstitutional conditions. *Id.*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. Const. amend. XII. The Constitution "does not mandate comfortable prisons." *Blackmon v. Garza*, 484 F. App'x 866, 868–69 (5th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981)). However, "prison officials must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must

11

take reasonable measures to guarantee the safety of the inmates." *Blackmon*, 484 F. App'x at 868–69 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (internal quotations omitted).

"It is well-established in [the Fifth Circuit] 'that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'" *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)). Indeed, the Fifth Circuit has "repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures, and [it has] consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available." *Id.* at 361.

At the 12(b)(6) stage, all Plaintiff must do is plausibly state a claim for relief. The Court finds that he has done so. Plaintiff has alleged in his complaint how approximately 107,295 TDCJ prisoners suffer from and are at risk of suffering from a number of heat-induced illnesses due to unit temperatures that routinely exceed 100º Fahrenheit in the summer. (Compl., Dkt. 1, at 3, 5-6). Because of the extreme heat in TDCJ prisons, prisoners housed in unairconditioned units face an ongoing, enhanced risk of injury or death from extreme heat. The Fifth Circuit has repeatedly recognized that excessive heat in prisons constitutes cruel and unusual punishment under the Eighth Amendment. *See, e.g., Yates*, 868 F.3d 354. Plaintiff has alleged that Defendants are violating the Eighth Amendment because TDCJ prisoners face a substantial risk of serious harm from the extreme heat in their units—and several TDCJ prisoners have already fell ill and/or died due to excessive temperatures. (Compl., Dkt. 1, at 5, 10, 12). Accordingly, Plaintiff has adequately stated a claim for relief under the Eighth Amendment, and the Court denies Defendants' motion to dismiss under Rule 12(b)(6).

## IV. MISCELLANEOUS MOTIONS

### A. Motion to Stay Litigation

Defendants move to stay the litigation in this case while their motion to dismiss is pending. They contend, if the motion to dismiss is granted, all the claims against them would be dismissed. (Stay Mot., Dkt. 17, at 1-2). Defendants argue Plaintiff has "flooded the Court with questionable motions for class certification (ECF No. 14), and for appointment of class counsel, (ECF No. 13)." *Id.* at 2. Defendants contend a stay would promote efficiency and judicial economy and narrow or eliminate costly discovery obligations. *Id.* at 1.

Defendants' motion to stay is moot, as the Court denies Defendants' motion to dismiss. The Court additionally notes that filing a motion for class certification and a motion for appointment of counsel is hardly flooding the Court with motions.

### B. Motion to Strike

Defendants move to strike Plaintiff's sur-reply for failure to seek leave of court, as untimely, and for Plaintiff's failure to demonstrate exceptional or extraordinary circumstances for leave to file a sur-reply. (Strike Mot., Dkt. 16, at 1). Regarding the timing of the filing, Defendants contend the sur-reply is untimely whether the deadline to file was seven days or 14. (*Id.* at 2). They further argue they did not raise new arguments or evidence in their reply brief, and thus, Plaintiff failed to demonstrate exceptional or extraordinary circumstances warranting leave to file a sur-reply. (*Id.* at 2-3).

Plaintiff responds he placed his sur-reply in the prison mail system on August 20, 2024, replying to Defendants' reply filed on August 9, 2024. (Resp. Strike Mot., Dkt. 19, at 1). He concludes this is within a 14-day deadline and notes it is impossible for a *pro se* prisoner to always meet a seven-day deadline. *Id.* at 2. Plaintiff states he filed the sur-reply because issues were raised by Defendants that needed to be addressed and LexisNexis throughout TDCJ was offline when Plaintiff filed his

initial response. *Id.* Plaintiff states, if the Court may not *sua sponte* consider his sur-reply, he requests leave of court and apologizes for his failure to comply with the Local Rules. *Id.*

Due to delays in receiving mail in prison, the Court understands it is nearly impossible for a prisoner to file any sort of pleading within seven or 14 days. Courts around the country routinely allow prisoners additional time to file responses and replies. This Court is no different. Moreover, Defendants argued for the first time in their reply that Plaintiff's claims against Defendant Francis were not redressable by judicial relief. After consideration of Defendants' motion to strike and Plaintiff's response thereto, the Court grants Plaintiff leave to file his sur-replies and denies Defendants' motion to strike.

### C. Motion for Class Certification

Plaintiff moves for class certification, arguing excessive heat conditions have been litigated for well over a decade and will continue to be a contested issue unless the Court grants class certification for all TDCJ residents that are housed in units that are not fully airconditioned. (Class Mot., Dkt. 14, at 1). Plaintiff seeks class certification for all TDCJ residents that are housed at, or will be housed in the future at, one of the 70 units in TDCJ which are not fully airconditioned. *Id.* at 2. Plaintiff estimates the class will consist of over 100,000 members. *Id.* at 1, 3. Plaintiff argues the proposed class share the common contentions that excessive heat constitutes a condition of confinement that poses a substantial risk of serious harm to the health of all members of the proposed class and that Defendants have been deliberately indifferent to the risks posed to TDCJ residents. *Id.* at 3. Plaintiff argues his claims are typical of the proposed class. *Id.* at 4. Plaintiff acknowledges that courts generally assume a *pro se* prisoner is unable to represent a class. *Id.* at 4. For this reason, he requests the Court to appoint counsel. *Id.*; (Appointment of Counsel Mot., Dkt. 13, at 2). Defendants did not respond to Plaintiff's motions.

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. In pertinent part, the rule states:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Supreme Court has explained that Rule 23 does not set forth a mere pleading standard; rather, a party seeking class certification must affirmatively demonstrate his compliance with the Rule. *Wal-Mart v. Dukes*, 564 U.S. 338, 350 (2011). The district court must conduct a rigorous analysis of the Rule 23 requirements before certifying class action. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). The party seeking certification bears the burden of proof. *Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir. 1982).

Plaintiff, proceeding *pro se*, has not established that he will adequately and fairly represent the interests of class members. Requests for class certification by a prisoner acting *pro se* are generally denied because the prisoner cannot "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4) (one of the four prerequisites for class certification is a finding that the representative party can "fairly and adequately protect the interests of the class"); *Ali v. Immigration and Customs Enforcement*, No. 1:16-CV-037, 2017 WL 881102, at *2 (N.D. Tex. Feb. 2, 2017) (denying motion to certify class filed by immigration detainee proceeding *pro se* because he failed to show "he could fairly and adequately protect the interests of a purported class of other [immigration] detainees").

The Fifth Circuit has recognized that "[t]he adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Horton*, 690 F.2d at 484. Further, "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Gonzales v. Cassidy*, 474 F.2d 67 (5th

Cir. 1973). The class representative must possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001) (citation omitted).

Courts have consistently recognized that a *pro se* prisoner is not adequate to represent the interests of his fellow inmates in a class action. *See Caputo v. Fauver*, 800 F. Supp. 168, 169-170 (D.N.J. 1992) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *Ethnic Awareness Org. v. Gagnon*, 568 F. Supp. 1186, 1187 (E.D. Wis. 1983) (additional citations omitted)); *see also McGrew v. Tex. Bd. Of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir. 1995). This Court similarly finds that Plaintiff has not established that he will adequately and fairly represent the interests of class members.[3]

### D. Motion for Appointment of Counsel

Plaintiff requests the Court to appoint counsel. In a complaint based upon 42 U.S.C. § 1983, "[a] civil rights complainant has no right to the automatic appointment of counsel," and "the trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. § 1983 ... unless the case presents exceptional circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). This case sets forth factors which a federal court may consider in determining, in its discretion, whether counsel should be appointed, including:

> (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

*Id.* at 213 (citations omitted). The court "should also consider whether the appointment of counsel would be a service to the indigent plaintiff and, perhaps, the court and defendant as well, by sharpening

---

[3] Having determined Plaintiff has not demonstrated that each prong of Rule 23(a) is met, the Court need not reach the question of whether Rule 23(b) is met.

16

the issues in the case, shaping the examination of witnesses, and thus shortening the trial and assisting in a just determination." *Id.*

The Court has applied the factors delineated in *Ulmer* to the case at hand. Plaintiff has not, as of this date, established to this Court's satisfaction that the issues are too complex, that complainant is incapable of bringing them, or that appointed counsel is necessary to present meritorious issues to the Court. Plaintiff's request for class certification does not automatically entitle him to appointed counsel. *See Ulmer*, 691 F.2d at 213. Accordingly, Plaintiff's motion for the appointment of counsel is denied.

## V. STAY

As Plaintiff has noted, the Court currently has a case pending in which the plaintiffs allege that extreme heat in TDCJ's uncooled prisons is a well-established substantial risk of serious harm that constitutes cruel and unusual punishment. *See Tiede v. Collier*, No. 1:23-CV-01004-RP (W.D. Tex.) (Amended Compl., Dkt. 57). Plaintiffs in the *Tiede* case seek declaratory and injunctive relief against Defendant Collier on behalf of the entire TDCJ inmate population. (*Id.* at 58). The Organizational Plaintiffs in that case include Texas Prisons Community Advocates, whose "constituents consist of the roughly 130,000 people incarcerated in the Texas state prison system, including every person incarcerated in every TDCJ facility that lacks appropriate temperature control;" and Texas Citizens United for Rehabilitation of Errants, whose "constituents consist of the roughly 130,000 people incarcerated in the Texas state prison system, including almost 8,000 Veterans, and every person incarcerated in every TDCJ facility that lacks appropriate temperature control." (*Id.* at 5-7). Plaintiff is included in the membership of both these organizations.

As a general rule, a "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's

wide discretion to control the course of litigation."); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) ("The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice."). In determining whether a stay is appropriate pending the resolution of another case, the Court must consider (1) the potential prejudice to Plaintiff, (2) the hardship to Defendants if the stay is denied; and (3) the judicial-efficiency in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015).

Considering these factors, the Court determines that a stay will not prejudice Plaintiff. As mentioned above, he is included in the membership of two of the organizational plaintiffs, who are represented by counsel, in *Tiede*. Allowing this case to proceed will force Defendants to litigate the same claims in this case against a *pro se* plaintiff at the same time they are litigating the claims in *Tiede*. Importantly, a stay will also avoid expending unnecessary judicial resources. Accordingly, the Court stays this case during the pendency of the *Tiede* case.

## VI. CONCLUSION

Plaintiff has demonstrated his standing to sue and that his case is ripe for adjudication. Further, Plaintiff has met the requirements of the *Ex Parte Young* exception to sovereign immunity with respect to Defendants Collier and Guerrero and has stated a valid Eighth Amendment claim relating to excessive heat in TDCJ. Because the Court denies Defendants' Motion to Dismiss, their motion to stay is moot. The Court additionally denies Defendants' motion to strike, grants Plaintiff leave to file his sur-replies and denies Plaintiff's motion for class certification and motion for appointment of counsel. Finally, the Court finds additional litigation of the same issues in this case as the *Tiede* case would be an inefficient waste of scarce judicial resources. Accordingly, the Court stays this case during the pendency of the *Tiede* case.

**IT IS ORDERED** that Eric Guerrero is substituted for Defendant Bobby Lumpkin.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (Dkt. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Molly Francis are **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Class Counsel (Dkt. 13) and Motion for Class Certification (Dkt. 14) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED** leave to file his sur-replies (Dkt. 15, 18) and Defendants' Motion to Strike Plaintiff's Sur-Reply (Dkt. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Litigation (Dkt. 17) is **DISMISSED AS MOOT**.

**IT IS FINALLY ORDERED** that this case is **STAYED and CLOSED** during the pendency of *Tiede v. Collier*, No. 1:23-CV-01004-RP.

**SIGNED** on March 27, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE